OPINION OF THE COURT
 

 Simons, J.
 

 Under Insurance Law § 3420 (f) (2), an insured’s supplementary underinsured motorist coverage is triggered when the limit of the insured’s bodily injury liability coverage is greater than the same coverage in the tortfeasor’s policy. On this appeal, we are asked to determine whether the tortfeasor in a multiple-victim automobile accident should be deemed underinsured where he has a "single limit” policy providing a $300,000 limit per accident for both bodily injury and property damage liability, while the insured has a "split limit” policy containing a bodily injury limit of $100,000 per person and $300,000 per accident and a separate limit for property damage liability. For the reasons that follow, we conclude that the tortfeasor should be deemed underinsured, and arbitration of the underinsurance claim should proceed.
 

 I.
 

 This litigation arises from an accident in which respondent Brian Szeli and two other teenagers were struck and seriously injured by a car as they walked along the road. The tortfeasor driver’s automobile insurance policy contained a single liability limit of $300,000 per accident for both bodily injury and property damage. After negotiations, his insurer paid the full policy limit, allocating $95,000 to Szeli and splitting the remaining $205,000 between his companions. All sums were paid to compensate bodily injury claims.
 

 Szeli, asserting that his damages exceeded the settlement amount received, sought coverage under the supplementary uninsured/underinsured motorist (SUM) endorsement con
 
 *685
 
 tained in his father’s automobile insurance policy with petitioner Prudential Property and Casualty Co. As set forth in Insurance Law § 3420 (i) (2) and in the policy, SUM coverage is triggered when the tortfeasor’s bodily injury liability limit is less than the bodily injury liability limit in the insured’s policy. The Szeli policy with Prudential contained a bodily injury limit of $100,000 per person and $300,000 per accident. Szeli asserted that this coverage was greater than the tortfeasor’s $300,000 single limit coverage for both property damage and bodily injury and therefore the tortfeasor was an underinsured motorist under the terms of the policy and Insurance Law § 3420 (f) (2).
 

 When Prudential denied coverage Szeli sought arbitration. Prudential then instituted this proceeding pursuant to CPLR article 75 seeking a permanent stay. Supreme Court denied the petition and directed the parties to proceed to arbitration. The Appellate Division reversed, holding that the $300,000 available in the tortfeasor’s policy was equal to or greater than the bodily injury liability coverage in the Prudential policy, whether the $100,000 per person limit or the $300,000 per accident limit was employed in the comparison. We granted leave to appeal and now reverse.
 

 II.
 

 Insurance Law § 3420 (f) (2) provides that supplementary uninsured/underinsured coverage, when purchased at the option of the insured, is available "if the limits of liability under all bodily injury liability bonds and insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage” provided by the insured’s policy. While the comparison called for would appear to be straightforward — the insured’s bodily injury coverage versus the tortfeasor’s — the matter becomes less clear, and is not addressed directly by the statute, when the two policies to be compared employ different limit structures.
 
 [1]
 
 Thus, the appeal before us raises two related issues. First, when there are multiple victims in an accident
 
 *686
 
 but a single claimant under a policy providing SUM coverage, should the insured’s bodily injury limit for purposes of the comparison be the per person amount or the per accident amount? Second, for purposes of the comparison, should the tortfeasor’s entire single limit be considered his bodily injury limit even though property damage coverage is also contained in the limit?
 

 Insurance Law § 3420 (f) (2) was enacted to allow an insured to "obtain the same level of protection for himself and his passengers which he purchased to protect himself against liability to others” (State Executive Dept Mem, 1977 McKinney’s Session Laws of NY, at 2446). By its terms, the statute calls for a facial comparison of the policy limits without reduction from the judgment of other claims arising from the accident
 
 (see, Matter of Commercial Union Ins. Co. [Raymond], 172
 
 AD2d 988, 990,
 
 lv denied
 
 78 NY2d 858,
 
 supra; Manfredo v Centennial Ins. Co.,
 
 124 AD2d 979).*
 
 [2]
 

 Prudential argues that the facial comparison here is clear: the tortfeasor has $300,000 available; Szeli has, at most, the $300,000 limit allowed per accident. Because Szeli’s policy does not provide greater coverage, the tortfeasor is not under-insured. In any event, Prudential argues, it is Szeli’s limit of $100,000 per person — not the $300,000 per accident limit— that should be used in the comparison. Though three persons were injured in the accident, only one is claiming under the Prudential policy. Thus, Prudential reasons, the logical comparison is the per person limit in each policy ($300,000 in the tortfeasor’s versus $100,000 in the insured’s).
 

 Szeli responds that Prudential’s facial comparison is flawed by its failure to take into account the fact that property damage liability is also covered by the tortfeasor’s $300,000 single limit. Under Vehicle and Traffic Law § 311, a New York motorist is required to have at least $5,000 in property damage liability coverage. Because the tortfeasor’s policy meets the statutory requirements only if it is construed as providing the property liability minimum, Szeli contends that at most the tortfeasor has $295,000 available for bodily injury cover
 
 *687
 
 age. Second, Szeli argues that in an accident involving more than one victim, it is the per accident limit, not the per person limit, that is relevant. Thus, Szeli concludes, his policy provides $300,000 in bodily injury coverage, the tortfeasor’s policy contains no more than $295,000 in coverage, and SUM coverage is properly invoked.
 

 III.
 

 Because Insurance Law § 3420 (f) (2) itself does not clearly resolve the issue, it is helpful to refer back to the essential purpose of the statute: to provide the insured with the same level of protection he or she would provide to others were the insured a tortfeasor in a bodily injury accident. The necessary analytical step, then, is to place the insured in the shoes of the tortfeasor and ask whether the insured would have greater bodily injury coverage under the circumstances than the tortfeasor actually has. Under the circumstances here, a multiple-victim accident, Szeli’s policy with Prudential would provide $300,000 in coverage for bodily injuries
 
 plus
 
 an additional amount for any property damage. The tortfeasor’s policy, by contrast, provides $300,000 for bodily injuries
 
 less
 
 any amount payable for property damage. Viewed in this light, we agree with the insured here and Supreme Court below that the tortfeasor is underinsured for purposes of Insurance Law § 3420 (f) (2).
 

 Concededly, in circumstances where there is no property damage, as here, the tortfeasor’s single limit policy provides coverage equivalent to that of the Szeli policy with Prudential. However, as Prudential acknowledges, the determination of underinsurance coverage under Insurance Law § 3420 (f) (2) is to be made facially from the policies and not by reference to the particular claims actually arising from any given accident. The tortfeasor’s policy is facially valid under New York law only if it is construed to contain the required minimum amount of property damage coverage. While we need not decide precisely how much of the tortfeasor’s coverage is properly assignable to property damage liability, there can be no question that a policy facially offering $300,000 exclusively for bodily injury liability insurance provides greater bodily injury coverage than one facially offering $300,000 divided between bodily injury and property damage.
 

 Similarly, we reject Prudential’s assertion that the per person limit ($100,000) in its policy rather than the per
 
 *688
 
 accident limit ($300,000) should be employed in the underinsurance comparison when there is a multiple-victim accident but only one underinsurance claimant
 
 (accord, Heirs of Leetz v Arnica Mut. Ins. Co.,
 
 839 P2d 511, 513 [Colo App];
 
 Staub v Hanover Ins. Co.,
 
 251 NJ Super 66, 68, 596 A2d 1096, 1097). Under Prudential’s view, the bodily injury limit to be employed in the comparison would turn on the number of insureds making SUM claims irrespective of the number of persons injured in the accident, even though it is the number of injured persons that is relevant to determining the applicable limit under the insured’s liability coverage ($100,000 per person and $300,000 per accident). Prudential’s approach appears to confuse two separate operations: the determination of whether underinsurance is available in the first instance, on the one hand, and, on the other, the determination of the limit to be applied under the underinsurance endorsement once SUM coverage has in fact been triggered. While the number of insureds making claims will of course be relevant (in a split limit SUM endorsement) to the latter determination —i.e., the limit of liability once SUM coverage is triggered— the determination of
 
 whether
 
 SUM coverage is available at all is made without reference to the terms of the SUM endorsement. Instead, that determination requires a comparison of each policy’s bodily injury liability coverage as it in fact operates under the policy terms applicable to that particular coverage. Only by doing that comparison is it possible to make the required determination: whether the tortfeasor has less bodily injury liability coverage than the insured.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition to stay arbitration denied.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . [3] The limit to be used in the comparison is the insured’s bodily injury limit, not the limit contained in the insured’s SUM endorsement
 
 (see, Matter of Automobile Ins. Co. v Stillway,
 
 165 AD2d 572, 575;
 
 Matter of Fireman’s Fund Ins. Co. v Freda,
 
 156 AD2d 364, 365;
 
 Nationwide Mut. Ins. Co. v Figliomeni,
 
 147 AD2d 942, 942-943;
 
 Di Stasi v Nationwide Mut. Ins. Co.,
 
 132 AD2d 305, 310;
 
 see also, Maurizzio v Lumbermens Mut. Cas. Co.,
 
 73 NY2d 951). Decisions to the contrary should not be followed
 
 (see, e.g., Matter
 
 
 *686
 

 of Commercial Union Ins. Co. [Raymond],
 
 172 AD2d 988,
 
 lv denied
 
 78 NY2d 858).
 

 [2]
 

 . Because the insurance contract here was entered into prior to the effective date of 11 NYCRR 60-2.3 and the accident also occurred prior to that date, we have no opportunity to address what effect, if any, that regulatory provision would have on the availability of underinsurance coverage where other claims have been paid.