SEAN DOYLE *v.* METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY
(SC 15939)

Borden, Berdon, Norcott, Katz, Palmer, McDonald and Peters, Js.[1]

---

[1] This appeal originally was heard by a panel consisting of Justices Borden, Berdon, Norcott, Palmer and McDonald. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte determined to consider the case en banc. Justices Katz and Peters were added to the panel, and they read the record, briefs and transcript of the original oral argument.

The listing of justices reflects their seniority status on this court as of the date of argument.

Argued December 3, 1998—officially released December 23, 1999*

*Bernard Pellegrino*, for the appellant (plaintiff).

*Karen T. Gerber*, with whom was *Frederick L. Murolo*, for the appellee (defendant).

*Opinion*

BORDEN, J. The sole question raised by this certified appeal is whether a tortfeasor's vehicle is underinsured

---

* December 23, 1999, the date that this opinion was released as a slip opinion, is the operative date for all substantive and procedural purposes.

within the meaning of General Statutes § 38a-336[2] if the tortfeasor has a $100,000 single limit liability policy and the plaintiff has a $100,000 per person and $300,000 per accident split limit uninsured motorist policy. The trial court concluded that, in such circumstances, the tortfeasor is not underinsured and, on appeal, the Appellate Court agreed. We affirm the judgment of the Appellate Court.

The facts relevant to this appeal are undisputed. The plaintiff, Sean Doyle, was operating his vehicle on Acad-

---

[2] General Statutes § 38a-336 provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage . . . with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112 . . . . Each insurer licensed to write automobile liability insurance in this state shall provide uninsured and underinsured motorists coverage with limits requested by any named insured upon payment of the appropriate premium . . . .

"(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. The limitation on the total amount of recovery from all policies shall not apply to underinsured motorist conversion coverage purchased pursuant to section 38a-336a. . . .

"(e) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section. . . ."

We recognize that at the time of the accident in 1994, General Statutes (Rev. to 1993) § 38a-336, as amended by Public Acts 1993, No. 93-77, § 2, Public Acts 1993, No. 93-297, § 1, and Public Acts, Spec. Sess., May 25, 1994, No. 94-1, §§ 35 and 36, was in effect. With the exception of Public Acts 1998, No. 98-189, §§ 1 and 2, which effected minor technical changes not relevant to this appeal, the statute has remained substantively the same. For the sake of clarity, references to § 38a-336 in this opinion are to the current revision of the statute.

emy Road in Cheshire when he was struck head-on by an automobile owned and operated by Angela Catone (tortfeasor). The plaintiff, who was alone in his vehicle, suffered personal injuries and other damages. A passenger in the tortfeasor's automobile was killed in the accident.

At the time of the accident, the tortfeasor had a $100,000 single limit liability policy issued by Liberty Mutual Insurance Company. The plaintiff was paid $33,382 under that policy as compensation for his injuries and property damage. The liability coverage of the tortfeasor's vehicle was exhausted by payments made to the plaintiff and to the estate of the deceased passenger of the tortfeasor's vehicle.

The plaintiff was insured under a policy issued by the defendant, Metropolitan Property and Casualty Insurance Company, with uninsured and underinsured motorist coverage limits of $100,000 per person and $300,000 per accident.[3] The plaintiff brought this action against the defendant seeking underinsured motorist benefits under that policy.

Both parties moved for summary judgment. The plaintiff claimed that, because more than one claimant had sought recovery under the tortfeasor's liability policy, the determination of whether the tortfeasor was underinsured within the meaning of § 38a-336 (e); see footnote 2 of this opinion; must be made by comparing

---

[3] The plaintiff's insurance policy describes split limits as follows: "The limits of liability shown in the Declarations for 'each person' is the most we will pay to any one person for all damages resulting from any one occurrence.

"Subject to this limit for 'each person,' the limits shown in the Declarations for 'each occurrence' is the most we will pay for all damages resulting from any one occurrence. This is the most we will pay regardless of the number of:

"1. covered persons; or

"2. claims made; or

"3. vehicles or premiums shown in the Declarations; or

"4. vehicles involved in the accident."

the tortfeasor's policy limit of $100,000 with the $300,000 per accident limit of the plaintiff's uninsured motorist policy. Under the interpretation urged by the plaintiff, he was entitled to uninsured motorist benefits because the applicable limits of the tortfeasor's policy are less than the applicable limits of his uninsured motorist policy. The defendant claimed, to the contrary, that the proper comparison is between the tortfeasor's policy limit of $100,000 and the $100,000 per person limit of the plaintiff's uninsured motorist policy. Under that interpretation, the tortfeasor was not underinsured, and hence the plaintiff was not entitled to recover under his uninsured motorist policy because the applicable limits of the tortfeasor's policy are equal to, not less than, the applicable limits of his uninsured motorist policy.

The trial court rendered summary judgment for the defendant, concluding that it was bound by *D'Arcangelo* v. *Hartford Casualty Ins. Co.*, 44 Conn. App. 377, 379–80, 689 A.2d 502, cert. denied, 240 Conn. 925, 692 A.2d 818 (1997), wherein the Appellate Court had held that "[w]here the [claimant's uninsured motorist] policy is a split limit policy, 'the total of the per person limit is the amount of liability insurance available to the claimant . . . .' "[4] The plaintiff then appealed to the Appellate Court, which summarily affirmed the judgment of the trial court. *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 48 Conn. App. 902, 710 A.2d 193 (1998). We granted the plaintiff's petition for certification limited to the following issue: "Did the Appellate Court properly

___

[4] In *D'Arcangelo* v. *Hartford Casualty Ins. Co.*, supra, 44 Conn. App. 378–79, the plaintiff had uninsured/underinsured motorist coverage of $100,000 per person and $300,000 per accident, which, when stacked for the plaintiff's three covered vehicles, totaled $300,000 per person and $900,000 per accident. The tortfeasor had a single limit policy of $500,000. The court compared the tortfeasor's $500,000 single limit policy to the plaintiff's $300,000 per person limit, and concluded that the tortfeasor's vehicle was not underinsured. Id., 380–81.

conclude that the tortfeasor's vehicle is not underinsured when the tortfeasor has a $100,000 liability policy and the plaintiff has a $100,000/$300,000 split limit uninsured motorist policy in circumstances where, due to the existence of multiple claimants, the plaintiff's recovery under the tortfeasor's policy is less than $100,000?" *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 245 Conn. 903, 719 A.2d 1163 (1998).

Whether the tortfeasor's vehicle is underinsured in the present case is a matter of statutory interpretation. "Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Shawmut Mortgage Co.* v. *Wheat*, 245 Conn. 744, 748–49, 717 A.2d 664 (1998).

"[B]roadly stated . . . the purpose of underinsured motorist coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 305, 673 A.2d 474 (1996). "Application of § 38a-336 involves two separate inquiries. First, it must be determined whether the tortfeasor's vehicle is an 'underinsured vehicle' within the meaning of the statute. Second, after this determination is made and underinsured motorist coverage is found to be applicable, the finder of fact calculates the amount of the award to be paid the victim." *Covenant Ins. Co.* v.

*Coon,* 220 Conn. 30, 33, 594 A.2d 977 (1991). Because we conclude that the tortfeasor's vehicle is not underinsured within the meaning of § 38a-336, we address only the first of these two inquiries in the present case.

"[I]n determining whether a motor vehicle is underinsured for purposes of [§ 38a-336], the aggregate of the limits of all such bonds and policies on the tortfeasor's motor vehicle is compared against the amount of uninsured motorist coverage of the insured. . . . If the aggregate is less than the limits of liability in the uninsured motorist portion of the insured's policy, then the underinsurance coverage is activated." (Citation omitted; internal quotation marks omitted.) *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 630, 569 A.2d 1105 (1990), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 37. "Courts construing statutes like [§ 38a-336] that compare uninsured motorist coverage limits with tortfeasor liability limits have generally held that the legislative objective was simply to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage." *American Motorists Ins. Co.* v. *Gould,* supra, 632.

This court has not considered specifically the question of whether a tortfeasor's vehicle is underinsured within the meaning of § 38a-336 if the tortfeasor's single limit liability coverage is less than the per accident limit of the plaintiff's split limit uninsured motorist coverage. We conclude, however, that this case is controlled by the consistent reasoning of this court in *American Motorists Ins. Co.* v. *Gould,* supra, 213 Conn. 625, and *Florestal* v. *Government Employees Ins. Co.,* supra, 236 Conn. 299, which compels the conclusion that the judgment of the Appellate Court should be affirmed.

In *American Motorists Ins. Co.* v. *Gould,* supra, 213 Conn. 628, the amount of the tortfeasor's liability insur-

ance was $140,000, and the amount of the underinsured motorist insurance coverage provided by the plaintiff's policy was $80,000. We held that the tortfeasor's vehicle was not an underinsured motor vehicle because, and *only* because, of the simple comparison between the two figures: the amount of the liability insurance coverage available to the plaintiff, namely, $140,000, was not less than the amount of the underinsured motorist insurance coverage provided by the plaintiff's policy, namely, $80,000. Id., 633.

In *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 31–32, the amount of the tortfeasor's liability insurance was $25,000 per person and $50,000 per accident. The underinsured motorist insurance policy at issue provided $50,000 of coverage. We held that the tortfeasor's vehicle *was* an underinsured motor vehicle because, and *only* because, of the simple comparison between the two figures: the amount of the liability insurance coverage available to the plaintiff, namely, $25,000, was less than the underinsured motorist insurance provided by the plaintiff's policy, namely, $50,000. Id., 34. Indeed, we reinforced that reasoning as follows: "We have . . . previously concluded that in determining the tortfeasor's liability limit for the purposes of the § 38a-336 (d) comparison, we must examine the amount 'of liability insurance [*that is*] available to [*the victims*].' . . . *American Motorists Ins. Co.* v. *Gould*, [supra, 213 Conn. 633]. Here, even though [the tortfeasor] had $50,000 per accident liability limits, [the plaintiff] never had more than $25,000 of this coverage potentially available to her." (Emphasis in original.) *Covenant Ins. Co.* v. *Coon*, supra, 34. We further reinforced that concept by noting that, although *Gould* "involved a different factual context, in that opinion we compared the uninsured motorist limit against the amount of liability insurance potentially available to the victims." Id., 34 n.5.

Thereafter, in *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 301, the tortfeasor's liability insurance was $20,000 per person and $40,000 per accident. The underinsured motorist insurance coverage provided by the plaintiff's policy was $20,000 per person and $40,000 per accident. Id., 301–302. We rejected the plaintiff's contentions that *Gould* should be overruled; id., 305–13; and that, if it were not overruled, it was distinguishable. Id., 313. In rejecting the contention that *Gould* was decided wrongly, we characterized the holding of that case as follows: "[U]nderinsured motorist benefits are not recoverable under our statutory scheme unless the limits of the underinsured motorist coverage available to the claimant exceed the total amount of liability insurance available to satisfy claims against the tortfeasor. *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 628–33; see also *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 34." *Florestal* v. *Government Employees Ins. Co.*, supra, 304. Thus, both by our language and by citing to the particular passages in *Gould* and *Coon*, we reasserted implicitly the simple comparison established by both of those cases for determining whether a particular vehicle is an underinsured motor vehicle.

In all of these cases, we reasoned that the determination of whether there was underinsured motorist coverage available to the plaintiff was to be determined by comparing the amount of liability insurance potentially available to the plaintiff from the tortfeasor with the amount of underinsured motorist coverage potentially available to the plaintiff under his or her underinsured motorist policy. These potential availabilities were calculated, moreover, by comparing the respective stated policy limits—liability and underinsured motorist. That comparison is mandated by the specific language of § 38a-336 (e), which provides that "an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily

injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy . . . ." Furthermore, this simple comparison—of potentially available liability insurance with potentially available underinsured motorist coverage—was to be done, we held, irrespective of whether the liability coverage had been fully or partially exhausted by other claimants, irrespective of whether the coverage included a split or single limit, and irrespective of the motivation of the plaintiff in either purchasing the underinsured motorist coverage or seeking to recover under it.

Moreover, this calculation is perfectly consistent with the purpose of our underinsured motorist coverage statute. That purpose is to put the injured party in the same position—no worse and no better—that the party would have been in had the tortfeasor carried liability insurance equal to or more than the amount of underinsured motorist coverage available to the injured party. "[T]he purpose of underinsured motorist coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 305. That purpose compels the calculation that we have used in our prior cases because, if the amount of the liability insurance potentially available to the injured party is equal to or more than the amount of the underinsured motorist coverage potentially available to that party, the tortfeasor cannot reasonably be considered, from the viewpoint of the injured party, to be insured inadequately.[5]

---

[5] We acknowledge that, as Justice Palmer's dissent notes, in other contexts we have described our uninsured and underinsured motorist coverage statute as having a broad and remedial purpose. See *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 373, 641 A.2d 783 (1994) ("uninsured motorist statute is remedial in nature"); *Streitweiser* v. *Middlesex*

In this regard, the function of the plaintiff's split underinsured motorist coverage of $100,000 per person and $300,000 per accident is to provide broader coverage for the situation involving multiple claimants, if the tortfeasor is underinsured. Thus, for example, if the tortfeasor had possessed only $75,000 of liability insurance, and there had been three people injured in the plaintiff's vehicle, each claimant would have had $100,000 of underinsured motorist coverage available to him or her, for a total of $300,000. Put another way, by purchasing split underinsured motorist coverage of $100,000 per person and $300,000 per accident, the plaintiff here did not purchase more coverage than that provided by the tortfeasor's liability policy; instead, he simply purchased the same coverage for more people.[6]

*Mutual Assurance Co.*, 219 Conn. 371, 377, 593 A.2d 498 (1991) ("strong public policy favoring uninsured motorist coverage"); *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 197, 530 A.2d 171 (1987) ("remedial purpose of underinsured motorist coverage to protect and make whole a person injured at the hands of an uninsured/underinsured *motorist*" [emphasis in original]); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 250–51, 449 A.2d 157 (1982) ("it is the intent of the legislature to provide broad coverage to victims of uninsured motorists"). In none of those cases, however, did we employ that description in order to decide *whether* a vehicle met the statutory definition of an underinsured motor vehicle. Furthermore, such a description cannot override the purpose of the statute to put the injured party in no better or worse a position than he would have been in had the tortfeasor carried adequate insurance. Thus, the description of the statute as remedial cannot convert an adequately insured motor vehicle into an underinsured motor vehicle.

[6] The dissent of Justice Palmer asserts that "[u]nder the per accident component of the plaintiff's underinsured motorist coverage, he is protected against losses of up to $100,000 in the event of an accident where, based on the existence of multiple claimants, *the tortfeasor's liability policy is exhausted before the plaintiff has recovered $100,000 in compensation under the tortfeasor's policy.*" (Emphasis added.) This assertion, which is the foundation of the dissent's conclusion, is fundamentally flawed.

First, there is no basis for the assertion in the undisputed meaning of split coverage, namely, $100,000 *per person* and $300,000 *per accident*. One cannot extrapolate from such coverage—except by fiat—the notion that it has anything to do with what the insured may actually recover from the tortfeasor's liability carrier, whether before or after exhaustion of the tortfeasor's liability coverage. Thus, the dissent would read out of the $300,000

Under any circumstances, however, there would be available to the plaintiff—or each of his passengers, if any—$100,000 of underinsured motorist coverage, which is the same as, and not more than, the amount of the liability coverage available to each of them under the tortfeasor's policy. Thus, where, as in the present case, the tortfeasor has $100,000 in liability insurance, the plaintiff's split underinsured motorist coverage does not convert an otherwise nonunderinsured vehicle into an underinsured vehicle.

In the present case, the comparison between the tortfeasor's liability coverage and the amount of underinsured motorist coverage available to the plaintiff compels the conclusion that the plaintiff is not entitled to underinsured motorist benefits. The amount of the tortfeasor's liability insurance available to the plaintiff was $100,000. Under the plaintiff's underinsured motorist insurance policy, the plaintiff—or any other pur-

per accident coverage the underlying $100,000 per person limit.

Second, the dissent's assertion begs the question posed by this case. That question is whether the undisputed meaning of such split coverage—namely, each person potentially has available to him no more than $100,000, with a total potential availability to all persons of $300,000 for any one accident—affords underinsured motorist coverage where the tortfeasor's liability policy has a total potential availability of $100,000. By assuming, without any basis, that the split coverage has such meaning that the dissent attributes to it, the dissent simply assumes away that question.

Third, the only basis for its assertion that the dissent offers is *"to treat the tortfeasor's single limit policy* as its split limit equivalent, in this case $100,000 per person and $100,000 per accident." (Emphasis added.) As the dissent must concede, however, such a conception amounts to a single limit liability policy of $100,000, because under *both*—a single limit $100,000 policy and the dissent's hypothetical policy—there is a total potential availability of $100,000 of liability coverage, irrespective of whether there is one or more than one liability claimant. Moreover, as the dissent also must concede, such a policy has no basis in the real world of insurance policies. At the least, none has been brought to our attention. Thus, notwithstanding the authorities from other jurisdictions on which the dissent relies, it is a flawed method of adjudication to decide a question of statutory interpretation by hypothesizing a factual situation that (1) simply mirrors the basic factual situation presenting the question in the case, and (2) has no basis in reality.

ported underinsured motorist coverage claimant—had $100,000 available to him. Moreover, this is true irrespective of the fact that the plaintiff's underinsured motorist policy had split limits of $100,000 per person and $300,000 per accident, because no matter what occurs the plaintiff has only $100,000 of such underinsured benefits available to him. Comparing, therefore, the amount of the liability insurance available to the plaintiff, namely, $100,000, to the amount of the underinsured motorist coverage available to the plaintiff, namely, $100,000, results in the conclusion that the tortfeasor's vehicle was not an underinsured motor vehicle and that, therefore, the plaintiff was not entitled to underinsured motorist insurance benefits.

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT, KATZ and PETERS, Js., concurred.

PALMER, J., with whom BERDON and MCDONALD, Js., join, dissenting. I disagree with the majority's conclusion that the tortfeasor's vehicle in this case was not underinsured within the meaning of General Statutes (Rev. to 1993) § 38a-336, as amended by Public Acts 1993, No. 93-77, § 2, Public Acts 1993, No. 93-297, § 1, and Public Acts, Spec. Sess., May 25, 1994, No. 94-1, §§ 35 and 36.

As the majority acknowledges, this court never has resolved the question of whether a tortfeasor's vehicle is underinsured for purposes of § 38a-336 when "the tortfeasor's single limit liability coverage is less than the per accident limit of the plaintiff's split limit uninsured [and underinsured] motorist coverage."[1] Neither the language nor the legislative history of § 38a-336

---

[1] For purposes of brevity, this opinion hereinafter refers to uninsured and underinsured motorist coverage, policies or statutes as underinsured motorist coverage, policies or statutes. No distinction between "uninsured" and "underinsured" is intended.

expressly addresses the circumstance in which the underinsured motorist provision of the insured's policy has two different liability limits.

I believe, however, that the fundamental policy underlying our underinsured motorist statutes mandates the conclusion that the tortfeasor in this case was underinsured within the meaning of our statutory scheme. It is not disputed that underinsured motorist coverage should be available to protect an injured claimant to the same extent that the claimant would have been protected if the tortfeasor had possessed as much in coverage under his or her liability policy as the claimant possesses under a policy of underinsured motorist coverage. See, e.g., *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 630, 632, 569 A.2d 1105 (1990), overruled in part on other grounds, *Covenant* v. *Coon*, 220 Conn. 30, 37, 594 A.2d 977 (1991). To make a meaningful comparison between a policy that, like that of the tortfeasor's policy, contains a single limit, with a policy that, like that of the plaintiff's policy, contains split limits, it is necessary to treat the tortfeasor's single limit policy as its split limit equivalent, in this case $100,000 per person and $100,000 per accident. See, e.g., *Windsor Ins. Co.* v. *Judd*, 321 Or. 379, 381, 898 P.2d 761 (1995) ($60,000 single limit liability coverage provides "$60,000 per person subject to a limit of $60,000 per accident"); *Mutual of Enumclaw Ins. Co.* v. *Key*, 131 Or. App. 130, 132, 883 P.2d 875 (1994) ("[a] single limit policy providing $300,000 of coverage is essentially a split-limit policy with limits of $300,000 per person and $300,000 per accident"). When one compares the tortfeasor's policy limits as so characterized with the limits of the plaintiff's policy, it is apparent that the tortfeasor was underinsured with respect to the per accident limit of her liability policy.[2] This is true even though the per

---

[2] Although the $100,000 per person limit of the tortfeasor's policy is equivalent to the $100,000 per person limit of the plaintiff's underinsured motorist policy, the tortfeasor's per accident limit of $100,000 is less than the plaintiff's

accident component will be activated only in cases, like this one, involving multiple claimants. Other states with analogous statutes also have drawn similar conclusions. See, e.g., *Botting* v. *Allstate Ins. Co.*, 707 A.2d 1319, 1321 (Me. 1998); *Staub* v. *Hanover Ins. Co.*, 251 N.J. Super. 66, 68–69, 596 A.2d 1096 (App. Div. 1991); *Prudential Property & Casualty Co.* v. *Szeli*, 83 N.Y.2d 681, 687–88, 635 N.E.2d 282, 613 N.Y.S.2d 113 (1994). Indeed, other than our Appellate Court's decision in *D'Arcangelo* v. *Hartford Casualty Ins. Co.*, 44 Conn. App. 377, 689 A.2d 502, cert. denied, 240 Conn. 925, 692 A.2d 818 (1997), I am aware of no case in which any court has reached a contrary conclusion.[3]

The statutory interpretation urged by the plaintiff is consistent with the remedial nature of our underinsured motorist statute. See, e.g., *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 373, 641 A.2d 783 (1994) ("our [under]insured motorist statute is remedial in nature and designed to protect people injured by [under]insured motorists"). It is axiomatic "that remedial statutes should be construed liberally in favor of those whom the law is intended to protect." *Dysart Corp.* v. *Seaboard Surety Co.*, 240 Conn. 10, 18,

per accident limit of $300,000. The tortfeasor's vehicle, therefore, is underinsured.

[3] Moreover, the reasoning of the Appellate Court in *D'Arcangelo* has been questioned. For example, the authors of the authoritative commentary on Connecticut's uninsured and underinsured motorist law have observed: "[T]he question arises whether the decision [in *D'Arcangelo*] is consistent with the general philosophy that [underinsured motorist] coverage should be available to protect an injured party to the same extent that [that] individual would have been protected had the tortfeasor possessed as much in liability coverage as the claimant possesses in uninsured/underinsured motorist coverage. See [*American Motorist Ins. Co.* v. *Gould*, supra, 213 Conn. 631]." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (Sup. IV 1997) § 1.6.2, p. S24. Moreover, the trial court in this case, although bound by the Appellate Court's holding in *D'Arcangelo*, indicated that it was "troubled" by the reasoning of the court in *D'Arcangelo* in light of the fundamental purpose of our underinsured motorist statutes.

688 A.2d 306 (1997); see also *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 8–9, 738 A.2d 623 (1999). Construing our statute in light of these considerations, the plaintiff's policy protects him against several related, but potentially distinct, eventualities. Under the per person component of his underinsured motorist coverage, he is protected against a loss in circumstances in which the tortfeasor carries a lesser amount of liability insurance. Under the per accident component of the plaintiff's underinsured motorist coverage, he is protected against losses of up to $100,000 in the event of an accident where, based on the existence of multiple claimants, the tortfeasor's liability policy is exhausted before the plaintiff has recovered $100,000 in compensation under the tortfeasor's policy.

I disagree with the majority that this court's holding in *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 30, leads to a contrary conclusion. In *Coon*, the tortfeasor's policy provided for split limit liability coverage of $25,000 per person and $50,000 per accident. Id., 31–32. The owner of the automobile in which the claimant was injured carried a single limit $50,000 underinsured motorist policy. Id., 31. After exhausting the tortfeasor's $25,000 per person liability limits, the claimant sought to recover under, inter alia, the owner's underinsured motorist policy. Id., 32. The insurer argued that the tortfeasor's vehicle was not underinsured within the meaning of § 38a-336 because the tortfeasor's $50,000 per accident liability coverage was not less than the $50,000 single limit underinsured motorist policy under which the claimant sought to recover. See id., 32–33. This court disagreed, concluding that, because the claimant could only make a claim against the $25,000 per person limit of the tortfeasor's policy, the per person limit was the only limit *available* to the claimant. Id., 34. Thus, this court stated in *Coon* that "it is consistent with our earlier interpretation of § 38a-336 to conclude that the

total of the per person limit is the amount of liability insurance available to the claimant, i.e., $25,000." Id. Our resolution of the underinsured motorist issue raised by *Coon* was dictated by the fact that, in that case, the *tortfeasor* had a split limit liability policy while the policy under which the *claimant* sought to recover had single limit underinsured motorist coverage. See id., 31–32. In this case, by contrast, the plaintiff's underinsured motorist policy has split limits whereas the tortfeasor's policy is a single limit policy.

Indeed, the result that this court reached in *Coon* and the analysis we employed therein are fully consistent with the interpretation of § 38a-336 that the plaintiff urges. In *Coon*, the policy under which the claimant sought to recover had single limit underinsured motorist coverage. Id., 31. That policy is the equivalent of a split limit policy with limits of $50,000 per person and $50,000 per accident. The tortfeasor in *Coon* had a split limit policy of $25,000 per person and $50,000 per accident. Id., 31–32. A comparison of the limits of the policy under which the claimant sought to recover with the limits of the tortfeasor's policy reveals that, although the per accident limits of the two policies were the same, the tortfeasor's per person liability limit was less than the per person underinsured motorist limit of the policy under which the claimant sought to recover. Thus, as we concluded in *Coon*, the tortfeasor in that case was underinsured. Id., 33.

The majority also suggests that the plaintiff's interpretation of § 38a-336 is improper because it is founded not upon the statutory language, but, rather, upon the fact that multiple claimants exhausted the liability limits of the tortfeasor's policy. See *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 306, 673 A.2d 474 (1996) (exhaustion of policy limits due to multiple claims does not alter effect of statute); *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 633

(same). I disagree. The existence of multiple claimants does not affect the determination of whether the tortfeasor was underinsured. Rather, the fact that multiple claimants exist is relevant only because the plaintiff would have had no need to seek recovery under his underinsured motorist policy but for the exhaustion of the tortfeasor's per person policy limits *due to the existence of such additional claimants.* Although the plaintiff can never recover more than the $100,000 per person limit of his underinsured motorist policy, he is entitled to the same protection that he would have had if the tortfeasor's per accident limit had been equal to that component of his underinsured motorist policy.

Finally, the defendant contends that the relief sought by the plaintiff in this case was anticipated by the legislature when it provided for the option of underinsured motorist conversion coverage in 1994. See General Statutes § 38a-336a;[4] see also *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 307–308 ("This option, which is available for an additional premium to consumers who wish to purchase it in lieu of standard underinsured motorist coverage under § 38a-336, pro-

---

[4] General Statutes § 38a-336a provides in relevant part: "(a) Each insurer licensed to write automobile liability insurance in this state shall offer, for an additional premium, underinsured motorist conversion coverage with limits in accordance with section 38a-336. The purchase of such underinsured motorist conversion coverage shall be in lieu of underinsured motorist coverage pursuant to section 38a-336. . . .

"(c) Each insurer shall be obligated to pay to the insured, up to the limits of the policy's underinsured motorist conversion coverage, after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. If the insured purchases such underinsured motorist conversion coverage, then in no event shall the underinsured motorist coverage be reduced on account of any payment by or on behalf of the tortfeasor or by any third party. . . .

"(e) For purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the fair, just and reasonable damages of the covered person. . . ."

vides enhanced protection to victims of underinsured motorists because, in contrast to coverage under § 38a-336, it is activated when 'the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the fair, just and reasonable damages of the covered person.' . . . General Statutes § 38a-336a [e].''). There is nothing in the text of this state's underinsured motorist conversion coverage statute, in its legislative history, or in the reason for its enactment, to support the defendant's claim that, in light of the insurance policies in effect in this case, the tortfeasor's vehicle was not underinsured within the meaning of § 38a-336. Consequently, the defendant has failed to demonstrate that the existence of underinsured motorist conversion coverage has a bearing on our determination of the issue raised by this case.

In my view, therefore, the plaintiff, not the defendant, is entitled to summary judgment on the issue of the availability of coverage under the underinsured motorist policy issued to the plaintiff by the defendant.

Accordingly, I respectfully dissent.

MCDONALD, J., with whom BERDON, J., joins, dissenting. I agree with the dissent of Justice Palmer. The majority concludes that, where there are multiple claimants, a policy that offers a total of $100,000 to them collectively "gives the same resource" to each one of the claimants as a policy making available collectively to those multiple claimants a total of $300,000 with each one limited to $100,000. To state this proposition is to refute it. There is an undoubted and easily understood real, practical and economic advantage in the $100,000/$300,000 policy to each one of the claimants over the $100,000 single limit policy.