2003 VT 6

## Ronald Derosier v. Pawtucket Mutual Insurance Company

[819 A.2d 739]

No. 01-106

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 31, 2003

*Michael I. Green* of *O'Neill Crawford & Green*, Burlington, for Plaintiff-Appellee.

*Stephen Soule* of *Paul, Frank & Collins*, Burlington, for Defendant-Appellant.

¶ 1.   **Skoglund, J.** This is a declaratory judgment action concerning the level of underinsured motorist (UIM) coverage available to a single insured who is among the multiple injured persons with claims against the tortfeasor's single-limit policy. The issue is whether, in such situations, Vermont law requires the liability limits of the tortfeasor's policy to be compared to the per person or the per accident limits of the injured insured's split-limit UM/UIM coverage. In its summary judgment ruling, the superior court concluded that because the tortfeasor's policy was subject to multiple claims as the result of the accident, the liability limits of the tortfeasor's policy had to be compared with the per accident, not the per person, liability limits of the injured insured's UM/UIM coverage to determine whether the tortfeasor was underinsured. We reverse.

¶ 2.   On July 29, 1999, plaintiff Ronald Derosier and two other passengers, Teresa Paul and her son Adam Corbett, were injured in a single-car accident caused by the driver's negligence. As the result of the accident, Ms. Paul incurred medical bills in excess of $80,000, and plaintiff incurred medical bills in excess of $10,000. The driver/tortfeasor's vehicle was insured under a policy with Champlain Casualty Company of Vermont. The policy carried a liability limit of $60,000 per accident, notwithstanding the number of claimants.

¶ 3.   Champlain Casualty agreed to pay the entire amount to the injured claimants according to a distribution agreement to be fashioned by them. The parties arrived at a tentative agreement, whereby Ms. Paul would accept $59,000 to settle her claims, while plaintiff would accept the other $1000 and pursue an additional recovery from defendant Pawtucket Mutual Insurance Company, which had issued an automobile insurance policy to plaintiff's mother. The Pawtucket policy provided UM/UIM coverage up to $50,000 for each person making a claim under the policy with respect to a single accident, and up to $100,000 for all claims made by more than one person injured in a single accident.

¶ 4.   Pawtucket Mutual declined to provide UIM coverage to plaintiff on the grounds that the tortfeasor's vehicle was not underinsured, given that the $60,000 liability limit in the tortfeasor's policy was greater than the $50,000 per person limit on UIM coverage in the Pawtucket policy. Plaintiff brought the instant declaratory judgment action and filed a motion for summary judgment. The superior court granted plaintiff's motion, ruling that the tortfeasor's vehicle was underinsured because, in a multiple-victim accident, the per accident limits of the tortfeasor's and the insured's policies must be compared.

¶ 5. On appeal, Pawtucket Mutual argues that the superior court's ruling contravenes the terms of the Pawtucket policy and Vermont law. Plaintiff responds by asking this Court to reject an "apples to oranges" comparison between the per person limit in the Pawtucket policy and the per accident limit in the tortfeasor's policy.

¶ 6. We conclude that, under the plain language of 23 V.S.A. § 941(f) and the unambiguous terms of the Pawtucket policy, the tortfeasor's vehicle was not underinsured, and thus plaintiff was not entitled to UIM coverage under the Pawtucket policy. Section 941(f) provides that

> a motor vehicle is underinsured to the extent that its personal injury limits of liability at the time of an accident are less than the limits of uninsured motorists coverage applicable to any injured party legally entitled to recover damages under said uninsured motorist coverage.

¶ 7. The "personal injury limits of liability" in the tortfeasor's policy are $60,000 per accident, irrespective of the number of claimants. Thus, to determine whether plaintiff is underinsured, we must compare the $60,000 limit in the tortfeasor's policy to "the limits of uninsured motorists coverage *applicable to any injured party legally entitled to recover damages under said uninsured motorist coverage." Id.* (emphasis added). Under the Pawtucket policy, the maximum limit of liability for UM/UIM coverage is $50,000 for any one person in any one accident and $100,000 for more than one person in any one accident. The policy expressly states that the $100,000 per accident limit is subject to the $50,000 per person limit. Further, the policy states that the maximum limit is the most that will be paid regardless of the number of insureds, claims, or vehicles involved in the accident.

¶ 8. Plaintiff is the only claimant covered under the Pawtucket policy. He is the only "injured party legally entitled to recover damages" under that policy's uninsured motorist coverage. The "limits of uninsured motorists coverage applicable" to plaintiff under the policy is $50,000. Therefore, 23 V.S.A. § 941(f) requires us to compare the $60,000 personal injury liability limit in the tortfeasor's policy to the $50,000 limit of UM/UIM coverage applicable to plaintiff in the Pawtucket policy. Doing so demonstrates that the tortfeasor was not underinsured at the time of the accident, and thus plaintiff is not entitled to UIM coverage under the Pawtucket policy. Accordingly, plaintiff cannot recover from the uninsured motor vehicle provision of the Pawtucket policy, and the trial court erred in so ruling.

¶ 9.   Our holding does not require a comparison of "apples to oranges," as plaintiff suggests. Rather, it simply requires the comparison of liability limits mandated by § 941(f). Plaintiff contends that this interpretation will lead to unfair results, and yet he advances a construction of § 941(f) that would expose insurers to potential unlimited UIM liability based on the number of persons injured in an accident rather than on the terms of the applicable insurance policy or the language of the governing statute.

¶ 10.   As the Connecticut Supreme Court explained in *Doyle v. Metropolitan Property & Casualty Insurance Co.*, 743 A.2d 156, 161 (Conn. 1999), the function of split-limit UIM coverage is to provide broader coverage in situations involving multiple "claimants," but such coverage cannot "convert an otherwise nonunderinsured vehicle into an underinsured vehicle." In *Doyle*, the tortfeasor had a $100,000 single-limit liability policy, and the insured claimant had a policy with split-limit UIM coverage of $100,000 per person and $300,000 per accident. Rejecting claims similar to those made by plaintiff here and construing a statute similar to § 941(f), the court held that the tortfeasor was not underinsured because the proper comparison was between the tortfeasor's liability limit and the per person limit of UIM coverage available to the single insured claimant. *Id.* at 161-62.

¶ 11.   Of course, in situations where multiple injured insureds covered under a single insurance policy are seeking UIM coverage, comparing per accident liability limits would be appropriate. For example, in *Botting v. Allstate Insurance Co.*, 707 A.2d 1319 (Me. 1998), three members of a family injured in an automobile accident sought to compare the $300,000 per accident limit of their split-limit UIM policy with the tortfeasor's $100,000 single-limit policy. The court held that because all three of the insureds had been injured in the accident, the per accident limit, rather than the per person limit, of the split-limit policy had to be compared to the tortfeasor's policy to determine whether the tortfeasor was underinsured. *Id.* at 1321; see *Day v. Allstate Ins. Co.*, 721 A.2d 983, 985 (Me. 1998) (reaching same result where couple injured in car accident sought UIM coverage under same policy). Similarly, in *Allstate Insurance Co. v. Sanders*, 644 N.E.2d 884 (Ind. Ct. App. 1994), two injured brothers sought UIM coverage under a $100,000 per accident single-limit policy. The tortfeasor had split-limit liability coverage of $50,000 per person and $100,000 per accident. Construing a statute similar to § 941(f), the court held that the tortfeasor was not underinsured because the per accident limit of the tortfeasor's policy was not less than the single limit stated in the policy insuring the brothers. *Id.* at 887.

¶ 12. Our case, however, presents a single injured insured claiming UIM coverage. Hence, comparing per accident liability limits would not be consistent with either § 941(f) or the insured's policy. Nevertheless, notwithstanding the plain language of the statute and the unambiguous terms of the insurance policy,* plaintiff suggests that UIM coverage should be available whenever an insured's damages exceed the amount actually available to the insured under the tortfeasor's policy, and that, in no event should an insured receive less that what he would have received had the tortfeasor been uninsured rather than underinsured. These arguments are unavailing for the reasons stated in another opinion issued today, *Colwell v. Allstate Insurance Co.*, 2003 VT 5, 175 Vt. 61, 819 A.2d 727.

*Reversed and remanded.*

---

* Plaintiff does not dispute that the split-limit UM/UIM-coverage endorsement submitted below by Pawtucket Mutual is the relevant and applicable provision in the Pawtucket policy.