GAIL DIMMOCK *v.* ALLSTATE
INSURANCE COMPANY
(AC 24064)

Foti, West and DiPentima, Js.

---

Argued February 9—officially released August 3, 2004

*Francis X. Drapeau*, with whom, on the brief, was *Kathleen M. Grover*, for the appellant (plaintiff).

*Constance L. Epstein*, with whom, on the brief, was *Keith R. Rudzik*, for the appellee (defendant).

*Opinion*

WEST, J. The plaintiff, Gail Dimmock, appeals from the revised judgment of the trial court, rendered after the court granted the motion filed by the defendant Allstate Insurance Company to open the judgment and

for remittitur.[1] The plaintiff claims that the court improperly (1) opened the judgment and ordered a remittitur on the basis of her underinsured motorist policy limits, and (2) ordered a setoff of the amount paid to her by the underinsured tortfeasor. We affirm the judgment of the trial court.

The following facts are relevant to the issues on appeal. On November 26, 1998, the plaintiff was involved in an automobile accident with an underinsured motorist. The plaintiff received a $25,000 settlement from the underinsured tortfeasor, which was the limit of the tortfeasor's insurance policy. Thereafter, the plaintiff brought this action against the defendant, her insurer, pursuant to the underinsured motorist provision of her insurance policy. The defendant pleaded as special defenses, inter alia, that any award of damages to the plaintiff should be reduced (1) to the limits of her underinsured motorist coverage, namely, a maximum of $100,000 per person and $300,000 per occurrence (2) by any amount paid to her by the tortfeasor because of bodily injury.

The parties disagreed as to the extent of the plaintiff's injuries resulting from the accident, and the case was tried to a jury on the issues of liability and damages. The jury was not informed of the limits of the plaintiff's underinsured motorist coverage or of the fact that she had received a $25,000 settlement from the tortfeasor.[2] On November 8, 2002, the jury returned a verdict for the plaintiff in the amount of $335,000. That same day, the court accepted the jury's verdict. The defendant did

---

[1] The defendant filed only one motion, entitled "motion to open judgment and for remittitur." Although those parts of the motion were filed together, the court made separate rulings and, when necessary, we will refer to the motion by its separate parts.

[2] In accordance with Practice Book § 10-79, the issues of monetary policy limits and credits for payments by or on behalf of third party tortfeasors were not submitted to the jury.

not file any postverdict motions, and, on November 20, 2002, the court rendered judgment for the plaintiff in the amount of $335,000. On January 10, 2003, the defendant filed a motion to open the judgment and for remittitur pursuant to Practice Book §§ 17-4[3] and 17-3,[4] and General Statutes §§ 52-228[5] and 38a-336 (b).[6] The court granted the motion to open the judgment on February 24, 2003, and granted the motion for remittitur on March 3, 2003. The court ordered that the judgment be reduced to $75,000—the $100,000 limit of the plaintiff's underinsured motorist coverage reduced by the $25,000 settlement paid to the plaintiff by the tortfeasor. The plaintiff appealed to this court.

I

The plaintiff first claims that the court improperly opened the judgment and ordered a $260,000 remittitur

[3] Practice Book § 17-4 provides in relevant part: "(a) Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ."

[4] Practice Book § 17-3 provides in relevant part: "If any judgment is rendered, by mistake or clerical error, for a larger sum than is due, the excess may be remitted by the party recovering the judgment, at any time, reasonable notice being first given to the adverse party or that party's attorney; and the judicial authority may thereupon order the record of such judgment to be corrected, and affirm the same for the amount of which it has been remitted. . . ."

[5] General Statutes § 52-228 provides: "If any judgment is rendered, by mistake or clerical error, for a larger sum than is due, the party recovering the judgment may have the amount of the judgment decreased by remittitur to the amount which is due, provided reasonable notice has been given to the adverse party or his attorney. The court may thereupon order the record of the judgment to be corrected, and affirm the judgment for the amount to which it has been decreased."

[6] General Statutes § 38a-336 provides in relevant part: "(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's unin-

on the basis of her underinsured motorist policy limits. Specifically, the plaintiff argues that the defendant's motion was nothing more than a motion for remittitur pursuant to Practice Book § 16-35[7] or a motion to reduce the verdict pursuant to Practice Book § 16-36[8] masquerading as a motion to open pursuant to Practice Book § 17-4 and a motion for remittitur pursuant to Practice Book § 17-3. The plaintiff supports that contention by arguing that (1) the court improperly granted the defendant's motion to open pursuant to § 17-4 because there was no "good and compelling reason" to open the judgment and (2) the court improperly granted the defendant's motion for remittitur pursuant to § 17-3 because the original judgment was not based on a mistake or clerical error. On the basis of those assertions, the plaintiff further argues that (3) the defendant's motions were, in reality, a motion for remittitur pursuant to § 16-35 or a motion to reduce the verdict pursuant to § 16-36 and should be treated as such. Accordingly, the plaintiff argues that the court improperly granted the motion because it was not filed within ten days of the court's acceptance of the verdict as required by §§ 16-35 and 16-36. The plaintiff further argues, in the alternative, that if we conclude that the motion was timely filed, the court improperly granted it because there was no good cause to order a remittitur.

---

sured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ."

[7] Practice Book § 16-35 provides in relevant part: "Motions in arrest of judgment . . . motions to set aside a verdict, motions for remittitur, motions for additur, motions for new trials . . . and motions pursuant to General Statutes § 52-225a for reduction of the verdict due to collateral source payments must be filed with the clerk within ten days after the day the verdict is accepted; provided that for good cause the judicial authority may extend this time. . . ."

[8] Practice Book § 16-36 provides in relevant part: "Motions to reduce the amount of a verdict or award pursuant to General Statutes §§ 52-225a or 52-216a shall be filed within ten days after the day the verdict or award is accepted and shall be heard by the judge who conducted the trial. . . ."

The specific arguments raised by the plaintiff weave a seemingly complex web among our rules of practice that, in reality, need not be untangled. We need conclude only that the defendant's motion to open pursuant to § 17-4 was granted properly, *or* that the defendant's motion for remittitur pursuant to § 17-3 was granted properly, *or* that the defendant's motion for remittitur, if improperly filed pursuant to § 17-3, was granted properly pursuant to § 16-35. Although we agree with the plaintiff that a motion for remittitur pursuant to § 16-35, filed before judgment was rendered, may have been *preferable* in this case, that was not the defendant's only means of recourse. We begin by addressing the propriety of the opening of the judgment pursuant to § 17-4, and end our analysis with the resolution of that issue.

We review the court's decision to open and to modify the judgment for an abuse of discretion. See *Pavone* v. *West*, 82 Conn. App. 623, 626, 846 A.2d 884 (2004). "The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book § 326 [now § 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation." (Internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 808, 695 A.2d 1010 (1997); Practice Book § 17-4. In the present case, it is undisputed that the motion to open was filed within four months of the original judgment. We need only to focus, therefore, on whether there was a "good and compelling reason" to open and to modify the judgment.

We begin with a brief review of the underlying purpose of underinsured motorist coverage. "The purpose of the coverage simply is to provide an insured who is injured in an accident with the same resources he would have had *if the tortfeasor had liability insurance equal*

*to the amount of the insured's uninsured/underinsured motorist coverage.*" (Emphasis added.) J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (3d Ed. 2004) § 1.3, p. 23; see also *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 85, 743 A.2d 156 (2000). The purpose is not "to guarantee full compensation for a claimant's injuries . . . ." *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 310, 673 A.2d 474 (1996). "Indeed, underinsured motorist protection is not intended to provide a greater recovery than would have been available from the tortfeasor . . . ." (Internal quotation marks omitted.) Id.

In order to enforce those principles, General Statutes § 38a-336 (b) imposes a cap on the amount recoverable under such a claim. Section 38a-336 (b) provides in relevant part: "An insurance company shall be obligated to make payment to its insured *up to the limits of the policy's uninsured and underinsured motorist coverage* after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but *in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . .*" (Emphasis added.) "The public policy established by the uninsured/underinsured motorist statute is to assure that every insured recovers the damages he or she would have been able to recover if the uninsured or underinsured motorist had maintained an adequate policy of liability insurance . . . equal to the amount of the insured's uninsured/underinsured motorist coverage." (Citations omitted.) J. Berk & M. Jainchill, supra, § 1.3, p. 23; see also *Doyle* v. *Metropolitan Property & Casualty Ins. Co*, supra, 252 Conn. 85.

In this case, the plaintiff contracted with the defendant for $100,000 of uninsured-underinsured motorist coverage per person. Accordingly, pursuant to § 38a-336 (b), the plaintiff was not entitled, under any circumstance, to recover more than $100,000 in policy benefits. The original judgment in this case, rendered in the amount of $335,000, directly contravened the statutory mandate prohibiting such recovery beyond the limits of the insured's policy. In light of that statutory violation, the court was well within its discretion to find that a "good and compelling reason" existed to open and to modify the judgment.[9]

On the basis of our conclusion that the court properly opened and modified the judgment pursuant to § 17-4, we need not address the remainder of the plaintiff's arguments with regard to her claim. The motion to open the judgment was sufficient, on its own, to justify the opening and modification of the judgment, regardless of the propriety of that motion pursuant to § 17-3 or § 16-35.[10]

## II

The plaintiff next claims that the court improperly ordered a setoff of the original judgment on the basis

[9] The plaintiff additionally relies on *Tiber Holding Corp.* v. *Greenberg,* 36 Conn. App. 670, 652 A.2d 1063 (1995), for the proposition that a defendant filing a motion to open more than twenty days after the judgment cannot rely on the merits of the judgment. The plaintiff's reliance on *Tiber Holding Corp.,* however, is misplaced, because that case dictates that the good cause required to open a judgment cannot involve the merits of the judgment only where (1) an appeal has been taken from the court's decision on the motion to open and (2) the motion was denied. Id., 671. Accordingly, *Tiber Holding Corp.* is not applicable here.

[10] The plaintiff argues, in addition, that the court improperly relied on *Connecticut Savings Bank* v. *Obenauf,* 59 Conn. App. 351, 758 A.2d 363 (2000). In that case, we held that it was proper to open a judgment seven years after it was rendered because the judgment was facially inconsistent with the complaint. Id., 355. We need not address the court's reliance on that case, however, because unlike the motion to open in *Obenauf,* the motion to open in this case was timely filed within four months of the judgment. That fact obviates our need to analyze this case under *Obenauf*

of the $25,000 settlement, that was paid to her by the underinsured tortfeasor. Specifically, the plaintiff argues that because the defendant did not file a motion to reduce the verdict pursuant to Practice Book § 16-36, and, additionally, because the defendant did not raise the issue of setoff in its postjudgment motions, the court's sua sponte[11] setoff order was improper. We disagree.

We conclude, on the basis of our analysis in part I, that the court properly set off the original judgment when it opened and modified the judgment pursuant to Practice Book § 17-4. The court had a "good and compelling reason" to reduce the judgment on the basis of the tortfeasor settlement in light of the statutory prohibition against that type of double recovery. See General Statutes § 38a-336 (b). Accordingly, the plaintiff's claim must fail.

We also point out the just nature of the trial court's decision. The plaintiff contracted with the defendant for, and paid premiums to obtain, $100,000 of underinsured motorist coverage. The plaintiff received exactly what she contracted for.

because, unlike the situation in *Obenauf*, we need not find a reason to open the judgment outside the four month period.

[11] *The plaintiff argues that the defendant did not raise the issue of setoff, and therefore the court ordered the setoff sua sponte. We note, however, that the defendant raised the issue of setoff for the tortfeasor's settlement as a special defense in compliance with Practice Book § 10-79. In addition, the defendant raised the issue in its motion to open the judgment and for remittitur when it (1) quoted the language of § 38a-336 (b), which provides in relevant part that "in no event shall the total amount of recovery from all policies* . . . exceed the limits of the insured's uninsured motorist coverage"; (emphasis added); (2) made reference to the available policy provisions of "$100,000-$300,000, *less payments by the tortfeasor*"; (emphasis added); and (3) made reference to the remaining underinsured motorist coverage of $75,000, which clearly took into account the $100,000 policy limit *minus the $25,000 settlement from the underinsured tortfeasor.* We therefore disagree with the plaintiff's assertion that the court ordered the setoff sua sponte.

The plaintiff has failed to provide this court with any justification for a $260,000 penalty to be imposed on the defendant as a result of an allegedly late postverdict motion. We fail to see how a postverdict motion, if untimely filed, would entitle her to the requested $260,000 bonus.

The judgment is affirmed.

In this opinion the other judges concurred.